HAMILTON BELL *et al.*, Appellants, v. WILLIAM DAWSON *et al.*, Respondents.

*Deed—Description—Uncertainty.*—A deed dated March 6, 1775, from G. to O., described " a lot of one arpent in front by forty arpens in depth, situated in the Grand Prairie; bounded on one side by Mr. Laclede, and on the other side by the said vendor, such as it now exists, which the said O. has seen and is satisfied therewith."   At the date of the deed G. owned a lot of three by forty arpens, which was bounded on both sides by Mr. Laclede. *Held*, that the deed was void for uncertainty of description.

*Appeal from St. Louis Circuit Court.*

This was an ejectment, commenced in the St. Louis Land Court, July 1, 1854, and taken by change of venue to the Circuit Court in 1856, and tried at the September term, 1859.

The land claimed was a tract of one by forty arpens, in the St. Louis Grand Prairie common fields, and alleged to be the southern arpent of the one and one-half arpens confirmed to Philibert Gagnon by the act of Congress of April 29, 1816, and surveyed as United States survey No. 1591.

To prove their title, the plaintiffs presented—

1. The report of Recorder Bates, confirming to Philibert Gagnon one and a half by forty arpens, under a concession recorded in 1 Livre Terrien, p. 22.

2. The concession dated February 7, 1769, for a tract of one and a half by forty, bounded on one side by land sold by Marie to Laclede, and on the other side by Leschappelles.

3. The United States survey No. 1591, for Philibert Gagnon, of one and a half by forty.

4. Archive 172. Conveyance from Philibert Gagnon to John B. Ortez, dated March 6, 1775, for " a lot of one arpent in front by forty arpens in depth, situated in the Grand Prairie, bounded on the one side by Mr. Laclede and on the other side by the said vendor, such as it now exists, which the said Ortez says he knows and is satisfied therewith."

To locate the land thus conveyed, plaintiff offered in evidence—

5. Archive 39, a conveyance dated July 1, 1768, from Alexis Marie to Pierre Laclede, bounded on one side by lot of Laclede, bought of Gabriel Dodier, on the other side by Philibert Gagnon, *dit* Sr. Laurent.

6. United States survey No. 3305, for Alexis Marie, for one by forty arpens.

7. Archive 36, dated July 1, 1768, from Gabriel Dodier to P. Laclede, for a lot — arpens in front by forty in depth, bounded on one side by Julien Roy, bought by Laclede, on the other side by Alexis Marie.

Bell v. Dawson.

8. United States survey No. 1584, for Laclede's legal representatives, for one by forty arpens.

9. United States survey No. 1592, to François Leschappelles' legal representatives, for one and a half by forty arpens.

10. Confirmation by Recorder Hunt to Alexis Marie's legal representatives, for one by forty, bounded north by Laurent La Rouge, south by Laclede.

The plaintiffs claimed as heirs and representatives of John B. Ortez.

The following diagram will show the land sued for and its connection with the adjoining tracts and surveys:

## DIAGRAM.

Laroche.

| | | | | |
|---|---|---|---|---|
| **L** | Sur. 1587. J. Labbe, L. R. | Jacques Labbe to L. Laclede. 2x40. | } Dec. 19, 1768, by Gagnon, Laroche. | Duralde Sur. for Laclede, 1770—1772, by Laurent and Laroche. | **K** |
| **H** **A** | Sur. 1592. Leschappelles | F. Leschappelles to Phil. Gagnon. Conc. Feb. 7, 1769. Deed Feb. 12, 1769. 1½x40. | 40 by 40, Surveyed for Gagnon, by Dural de, 1772, by Laclede and Laclede. | | **J** **B** |
| | Sur. 1591. Gagnon. | P. Gagnon, Conc. Feb. 7, 1769, 1¼x40. | | | |
| **F** | S. 3305. Marie. | Marie to Laclede, by Leschappelles. | 3 by Surveyed for Dural de, and Laclede | Grant to J. B. Ortez, Nov. 18, 1798; bounded N., Domain, S. by Ve, Rigauche 2 by J. B. Ortez to Sam. Bridge, Mar. 25, 1812; S. Ve. Rigauche, N. vac. lands. | **E** |
| **D** | | A. Marie to B. Vasquez, Dec. 19, 1780, by Laurent and Laclede. | | | **C** |
| | S. 1584. Laclede. | Laclede to Cerré, to Letourneau. | 1x40. | Letourneau to Ve. Rigauche, Feb. 23, 1811; to J. Charless, July 3, 1812. } bounded J. B. Ortez, E. Yosti. | |
| | 3296. J. Le Roy. | Roy to Laclede, to Cerré, 1781. | Cerré to Letourneau, to E. Yosti, Mar. 14, 1808. | E. Yosti to J. Charless, Aug.11, 1812. | Bounded, N., Rigauche, S., Ve. Chouteau. |
| | Sur. 1550. 2x40. Laclede. | | | | |

A, B, E, F.  Lands sued for and claimed by Plffs. by deed from Gagnon.
A, B, C, D.  2x40, granted to Ortes, Nov. 18, 1798, (on his petition.)
L, K, E, F.  3x40, owned by Gagnon at date of his deed to J. B. Ortez, March 6, 1775.

By reference to the diagram and survey, the evidence of the plaintiffs apparently located the land described in the deed of Gagnon to Ortez as the southern arpent of the one and a half by forty, conceded to Gagnon February 7, 1769—A, B, E, F on the diagram.

DEFENCE. The defendants contended that the deed under which plaintiffs claimed was void for uncertainty of description; that if the land was located as claimed by the plaintiffs that their ancestors had sold it, and title by statute of limitations, by virtue of possession from the year 1834. The evidence upon the latter point will not be noticed.

The defendants offered—

1. The concession to François Leschappelles for one and a half by forty, dated February 7, 1769, for one and a half by forty, bounded on the one side by Philibert Gagnon, on the other side by Jacques Labbe, at present Mr. Laclede.

2. Archive dated February 12, 1769, from F. Leschappelles to Philibert Gagnon, for one and a half by forty, bounded on one side by Mr. Laclede, on the other side by the vendee.

3. A survey made by Duralde, the Spanish surveyor, between the years 1770 and 1772, for Laurent, of a tract of three by forty arpens, bounded on one side by a lot of Sen. Laclede, on the other side by another lot of Laclede.

4. A conveyance from Jacques Labbe to Laclede, dated December 10, 1768, bounded by Gagnon and Laroche, for a lot of two by forty arpens.

5. Duralde's survey for Laclede of two by forty arpens, bounded by Laurent and Laroche, made in the year 1770–1772.

6. The confirmations to Leschappelles, Labbe, and Laroche, by the United States, and surveys 1592, 1587, &c.

7. Deed from Alexis Marie to Benito Vasquez, dated December 19, 1780, for one by forty, bounded by Laurent and Laclede, deceased, with a derivative title to the defendants.

To prove the sale of the lot sued for by John B. Ortez, in his life-time, defendants offered—

8. A deed from John B. Ortez to Samuel Bridge, dated

March 25, 1812, for two by forty arpens, in the Grand Prairie, bounded on the south by Ve. Rigauche, and north by vacant lands.

To show the location of this tract defendants read—

9. Deed from Josephte Payentte Ve. Regauche to Joseph Charless, for two by forty arpens, bounded by J. B. Ortez and Emilien Yosti, dated July 3, 1812, bought of Louis Letourneau, by deed of February 23, 1811.

10. Deed from Emilien Yosti to Joseph Charless, dated August 11, 1812, for one by forty arpens, bounded north by Ve. Rigauche, south by Ve. Chouteau.

Defendants proved the possession of Charless under the deeds of these lots, part of which are included in the Fair Ground, the north line of the Fair Ground being the south line of the Marie tract, survey 3305.

Defendants shewed a derivative title from Philibert Gagnon, and possession under it since the year 1824.

Plaintiffs offered testimony tending to prove possession by Ortez prior to 1803.

For defendants the court gave the following instructions:

" The deed from Philibert Gagnon to J. B. Ortez, read in evidence by the plaintiff, and puporting to bear date March 6, 1775, purports to convey a tract of land in the Grand Prairie, of one arpent in front by forty in depth, and the said arpent is bounded on the one side by land of Laclede, and on the other side by land of the vendor, the said Gagnon.

" If, therefore, the jury believe from the evidence, that at the time of the making of the said deed of Gagnon to Ortez, viz., March 6, 1775, that said Gagnon's land was three arpens wide by forty deep, and that the same was bounded on both sides by lands of Laclede, then the said deed of Gagnon to Ortez does not sufficiently locate and describe the land conveyed, and is void for uncertainty of description.

" If the tract of land of two arpens front by forty arpens deep, conceded to J. B. Ortez on the 18th November, 1798, by Lieut.-Governor Trudeau, and which was bounded on the south by land of Ve. Rigauche, includes the tract of one by

forty arpens for which suit is brought, then the said tract, and the lot sued for, were conveyed to Samuel Bridge by the deed of the said J. B. Ortez.

" In locating the tract of two and forty arpens sold by Ortez to Bridge, the jury will be guided by the calls of the deeds, and the actual location of the adjoining tracts made by the parties in possession, as shown by the deeds and testimony offered in evidence."

The plaintiffs asked, and the court refused, the following instructions :

" As to the deed from Philibert Gagnon to John B. Ortez, dated 6th March, 1775, the jury are instructed for the plaintiffs that, if they are satisfied from the evidence in the case, that the lot therein mentioned was situated in the southern part of the land or lot then owned by said Gagnon, and that the lot of Mr. Laclede, called for in said deed as boundary on one side, was on the south side of said Gagnon's land, then owned by him, then the jury may find that said deed was valid to convey the lot therein described.

" The jury are instructed that the deed of John B. Ortez to Samuel Bridge, dated the 25th March, 1812, of a lot of two by forty arpens, conceded to him in 1798, does not convey, and does not on its face purport to convey, the lot of one by forty arpens acquired of Philibert Gagnon, as a part of a concession to said Gagnon in 1769 of a lot of one and a half by forty arpens, and which was confirmed and surveyed by the United States to Philibert Gagnon, *dit* Laurent, or his legal representatives, and the jury will disregard the said deed in this case."

The remaining instructions are omitted.

*N. Holmes* with *B. A. Hill,* for appellants.

I. The ambiguity does not arise upon the face of the deed ; it is a latent, not a patent ambiguity.   (1 Greenl. Ev. § 297.)

II. Where the ambiguity arises upon the application of the deed to the subject matter of the grant, or upon the introduction of extrinsic evidence, parol evidence is always admis-

Bell v. Dawson.

sible to explain and remove it; and it is a question to be de-. termined by the jury.

Whatever ambiguity there was here arose only upon the presentation of extrinsic evidence on the part of the defendants.

1 Greenl. Ev. § 286 to 291, and notes; Miller v. Travers, 8 Bing. 244; Atkinson v. Cummins, 9 How. 479; Hurley v. Morgan, 1 Dev. & Bat. 425, 430–1, case of two "Rocky Branches"; Barkley v. Barkley, 3 McCord, 269; Ott v. Soulard, 9 Mo. 404, where the question was of two roads, the "public road" and the "royal road," the facts are to be found by the jury and the law by the court.

The ambiguity consisted in the question, which lot of Mr. Laclede? And the parol evidence only explained the true meaning of the words in the deed, without introducing any new words.

III. The practical construction of the parties—occupancy and use under the deed—possession—usage—ancient usage under ancient charters, or deeds—contemporaneous exposition—is the best rule and guide; and evidence that possession was presently taken by Ortez of the land or lot in controversy, under his deed, was admissible and competent to remove the ambiguity; and it was a question for the jury.

1 Greenl. Ev. § 300, n. (2), rule stated; 2 Co. Quid. 282, "has always been resorted to in explanation of the intent of the parties, and to give a construction to the location of the grant."

Livingston v. Ten Broeck, 16 J. R. 14, 23–4; Owen v. Bartholomew, 9 Pick. 520, 526; Choate v. Burnham, 7 Pick. 222, 230; Cambridge v. Lexington, 17 Pick. 274, 278; Clark `. Mungan, 22 Pick. 410; Crafts v. Hibbard, 4 Met. 452; Adams v. Frothingham, 3 Mass. 52; Evans v. Greene, 21 Mo. 10; 4 (Greenl.) Cruise's Dig., lib. 32, ch. 20, § 21 & n. (3); 4 Com. Dig. Foeff., b. 4, p. 176. "If foeffor says enter and enjoy according to the effect of this deed," it is a good livery of seisin; and so, if the foeffee enters in the life-time of the foeffor.

The clause, which is common to nearly all old French deeds, to the effect that the grantee takes the land (as in this case) " such as it now exists, which the said Ortez says he knows and is satisfied therewith," or (as in most instances) " which he says he has seen and visited (" *a vu et visitée*"), shows the existence of a usage here, in the French and Spanish times, closely resembling the ancient custom of livery of seisin under the English law: the parties went to the land and viewed it for the very purpose of seeing where and what the thing granted was.

Arthur v. Weston, 22 Mo. 380, Leonard, J. : " The highest degree of certainty was probably obtained by the ancient foeffment, where the parties and the land were all present, and the land conveyed was delivered by the grantor into the possession of the grantee."

*Whittelsey,* for respondents.

I. The court, as a matter of law, after the evidence was closed, could not tell the jury, nor lay down any rule for determining upon which portion of the three by forty of Gagnon the one by forty conveyed to Ortez was located.

*a.* What are the boundaries in a deed, is a matter of law; where these boundaries are, is a question of fact. The court must declare the former, the jury the latter. (Doe v. Paine, 4 Hawk. 64; Cockrell v. McQuinn, 4 Mon. 61 ; Whittelsey v Kellogg, 28 Mo. 404, 407 ; Ott v. Soulard, 9 Mo. 581 ; Evans v. Green, 21 Mo. 210.)·

It was the duty of the court to construe the deed.

*b.* The evidence did not enable the court to construe the deed. The call for Laclede might be answered either upon the north or the south, and the court could not say which.

The deed was ambiguous and the evidence did not explain the ambiguity.

Upon the point of ambiguity, patent and latent, see 1 Greenl. Ev., § 297–301, *n.* 1 & 2 ; 2 Phil. Ev. (C. & H. n.ʲd. 1859) pp. 749, 745, 780.

*c.* The deed remaining uncertain was void for that reason.

The rule laid down by the Supreme Court of the United States in Boardman v. Reed's lessee is, "That if the land granted be so inadequately described as to render its identity wholly uncertain, it is admitted that the grant is void." (Boardman v. Reed's lessee, 328, 345; Evans v. Ashley, 8 Mo. 177, 184; Jackson v. Rosevelt, 13 J. R. 97; Jackson v. Delaney, 13 J. R. 557; Jackson v. Ransom, 18 J. R. 107; Wright v. Pond, 10 Conn. 255; Huntt v. Gistt, 2 Har. & J. 498; Worthington v. Hyles, 4 Mass. 196; Thomas v. Thomas, 6 T. R. 671.)

BATES, Judge, delivered the opinion of the court.

This is an action of ejectment. The plaintiffs claim under a deed made on the 6th day of March, 1775, from Philibert Gagnon to John B. Ortez, for a piece of land described as " A lot of one arpent in front by forty arpens in depth, situated in the Grand Prairie bounded on one side by Mr. Laclede, and on the other side by the said vendor, such as it now exists, which the said Ortez says he knows and is satisfied therewith."

It was shown that, at the time this deed was made, Gagnon's land in the Grand Prairie, was a tract of three arpens in front by forty arpens in depth, and that it was bounded on both sides by lands of Mr. Laclede.

The court below, in effect, declared the deed void for uncertainty of description. This was right. The description was absolutely uncertain as to which side of the Gagnon tract it was intended to take Ortez's lot from, and there are no means of making the description certain.

Judgment affirmed; Judges Bay and Dryden concurring.